We'll hear argument first this morning in Case 16-1067, Murphy v. Smith. Mr. Banner. Mr. Chief Justice, and may it please the Court, when a prisoner wins a civil rights case, and he's awarded damages, and he's awarded attorney's fees, the prisoner himself has to pay part of the fees out of the damages judgment. The statute at issue in this case specifies the size of the prisoner's share. This is what the statute says. A portion of the judgment not to exceed 25 percent should be applied to satisfy the amount of attorney's fees. In the 20-plus years since the statute was enacted, virtually all the district courts have interpreted it literally. They identify an appropriate portion of the judgment not exceeding 25 percent, and they deduct that amount from the attorney fee award payable by the defendant. In our case, the Seventh Circuit read the statute differently to mean that attorney's fees must be taken out of the damages first, up to 25 percent of the damages, so that the defendant is only liable for any fees left over. But the statute does not say that. All it says is that the portion of the judgment no greater than 25 percent must be allocated to fees. Respondents mistakenly suggest that Congress's use of the word satisfy indicates that the plaintiff has to pay the largest possible share of the fees in all cases. But that can't be right, because the statute itself says what share the plaintiff has to pay, a portion of the judgment not exceeding 25 percent. The rest of the attorney's fee award in excess of the plaintiff's share is payable by the defendant up to the statutory cap of 150 percent of the damages. There's nothing in the statute. Sotomayor, your adversary points to a number of statutes that use the verb to satisfy, or I guess not the verb, but the proposition, to satisfy, to refer to the complete fulfillment of an obligation. How do you distinguish those examples? The word satisfy often means the complete fulfillment of an obligation, but in this statute it can't mean that, because the statute makes clear that the plaintiff doesn't have to completely fulfill the obligation to pay attorney's fees. The statute says exactly how much. Roberts, Well, it's sensible to have a cap. It's just a cap. Well, exactly. It's a cap. It's a 25 percent cap. That's right. It's the statute says that the plaintiff's share of the attorney's fees is 25 percent or less of the judgment. Roberts, Well, but you start with the notion of satisfaction. In other words, satisfying a debt. I mean, if you owe somebody $100 and you give them 50, that person isn't going to say, well, you've satisfied your obligation. No, that's right. And so the word satisfy, standing alone, sometimes often does mean complete payment, but that would make nonsense of the text of this statute. The text of this statute makes clear that the plaintiff doesn't have to pay the attorney's fees. No, no, I understand the point, but I'm just suggesting that that's not certainly a total response. Yes, you have to satisfy it, but as Justice Kennedy just suggested, there's also a cap. And if the reason you can't satisfy it is because of the cap, well, that's just the way the statute has balanced the two obligations. But the initial obligation is to satisfy the fees. Well, you know, there was a provision like that in some of the precursor bills, right? But that sentence was omitted from the final legislation. As this – there was a sentence that said exactly the interpretation that you've just been giving, that the defendant is liable only for fees in excess of 25 percent of the judgment. But as the statute was working its way through Congress, Congress rejected that provision. Congress kept the provision that appears in the statute, which says that the plaintiff's liability is 25 percent or less of the judgment. Kennedy, why would the Congress have required that a portion of the judgment be applied to satisfy the award, but then given the district court's discretion to award a trivial amount? Yeah. So that – A penny? That linguistic structure is common in statutes, and here quite sensible. It's common, for example, in statutes that require district courts to impose fines. Those are worded in a very similar way. It's – they say – they often say the defendant shall be fined an amount not exceeding X, and so the district court shall impose a fine, has to impose a fine. There's a cap of X, but no floor, and so the district court has a discretion to impose nominal fines, and in fact, nominal fines are not at all unusual. So it's a common linguistic structure for a statute. Here it's quite sensible. The alternative would have been to say that it's up to the district court whether to make the plaintiff pay any share, and while we don't have any direct evidence of Congress's intent here because the legislative history is so sparse, it would have been reasonable for Congress to worry that if it was optional with the district judges, many district judges might say, well, I just don't think it's right to make the plaintiff pay any share at all, ever. That, of course, had been prior practice under Section 1988. This statute was a limitation on the previous practice of Section 1988 in which the plaintiff was to pay any share. So what do you think? I know in your brief, you seem to suggest that the purpose for giving district court judges discretion was to ensure that the district courts could balance the fault of the defendant vis-à-vis the plaintiff, but I don't see anything in this statute that speaks to fault. I am more moved, and I don't know why or if you have disavowed it, that since the district court is intended in this judgment to compensate for injury, that it should be given some discretion to determine how much of that injury a plaintiff should actually be forced to bear when he or she was not at fault. Right, exactly. We certainly agree. It would be too strong to say that there's direct evidence that Congress intended any sort of fault-based system in this statute, because the only evidence we have of Congress's intent here is the words of the statute. The words allow a district court to go from 25 percent down, and in the 20-plus years that this statute has existed, the district courts have implemented that statute by focusing on the defendant's culpability. Let's assume, too. You don't think that it's odd to say – I mean, this language can be read either way, and it's very difficult, but you don't think it would be odd to say that the defendant, that the plaintiff has to pay a nominal amount, a dollar, to satisfy the amount of attorney's fees? How can that be satisfaction of attorney's fees if it's a nominal amount? You're never going to have satisfaction of the attorney's fees. But that's the line – that's the word that's used in the statute. When I say there's never going to be satisfaction, the attorney, the plaintiff's share is never going to literally satisfy the attorney fee award. And the reason I say that is that the typical judgment in prisoner cases is very, very small. I mean, it's an extraordinarily rare case in which even the maximum 25 percent would literally satisfy the attorney's fee award. Alito, but you could say that the fee – that the award has to satisfy the attorney's fees up to the cap. There wouldn't be anything odd about that. It just seems that you don't think that that's an odd use of the term satisfy? I mean, suppose a teacher said to the parent, your child can't function at school because the child is hungry. Would you give the child a portion of food for breakfast to satisfy the child's hunger? You wouldn't say, well, you know, if I give the child a tiny crumb, that would satisfy the hunger. Right. But satisfy is often used in other contexts where it's clear that there won't be complete satisfaction of the relevant obligation. So in ordinary speech, for example, an example we gave in our brief is to say that credits from a math class can be applied to satisfy the requirements of a chemistry major. They're not going to satisfy all the requirements of a chemistry major. They're going to go some way toward satisfying the requirements of a chemistry major. Ginsburg. You mentioned that the district courts have overwhelmingly understood that 25 to be the most that can come out of the plaintiff's recovery, and you asked a question about, I suppose, nominal, the nominal amount is taken from the plaintiff. Do you know what the practice has been in these 20 years in the district courts? Here we have 10 percent. What is the spread? The spread is 25 percent at the top and nominal amounts at the bottom. The district courts have actually been implementing the statute in a sensible way. The district courts have been, in deciding on the appropriate share for the plaintiff to pay, the district courts have been considering the extent to which making the defendant pay a greater share will deter future misconduct by prison guards, and the extent to which making the plaintiff pay a greater share will deter prisoners with meritorious claims from filing suits. Ginsburg. So some district courts have gone down to a minimal amount. Yeah. There have been some cases. There's cases where the plaintiff's share is nominal, like a dollar. There's also plenty of cases where the plaintiff's share is the full 25 percent. Now, I'll tell you what the pattern of cases is like over the past 20 years. It's the really egregious cases where you get the word nominal, plaintiff being paid only to pay a nominal share. When I say egregious cases, I mean cases where, say, a prisoner is brutally raped by a prison guard or where a prisoner is permanently maimed or disfigured by a prison guard. And so there's enough cases out there where, you know, once you see the facts of the case, you can get a pretty good sense of whether this is going to be a full 25 percent case or whether it's going to be something less. How would you write this if you wanted to, if you were Congress and wanted to get their version of the bill in one sentence, how would you have written it? We actually know that, because the precursor bill that we did. No, I said in one sentence. Yeah, I'm going to give you the one. The precursor bill was in two sentences. But the precursor bill included the one sentence that you're looking for, and it is in the – I'll get it for you. I'm sorry, it's in the yellow brief at page 12. We don't have to speculate about this. So in yellow brief, page 12, under heading C, beginning with the quotation that begins in the third line of that paragraph, this is the sentence that Congress could have written, in fact, nearly did write, that would have adopted the Respondent's position. If the award of attorney's fees is greater than 25 percent of the judgment, the excess shall be paid by the defendant. That would have been it. That would have adopted Respondent's view of the statute, but that sentence got deleted from the final legislation. Roberts. You say that the – one way that the discretion of the district court would be guided would be by the seriousness of the offense, and you gave a couple of examples. Yeah. I think it's pretty unusual to compensate for seriousness of the defense, or bad faith, I guess, of the defendant, through the manipulating the attorney's fees. Yeah. Wouldn't it normally in those cases result in a higher award of damages? It is unusual, and that's because, as far as we know, this statute is the only one of its kind. As far as we know, this is the only statute in which Congress has explicitly apportioned responsibility for attorney's fees. Well, but apportionment doesn't mean that the egregiousness of the conduct should be taken into account in fixing the size of the attorney's fees. Well, that's right, but the – I mean, that just doesn't follow. The question – if the question is why is it that we see the consideration of egregiousness with this statute, but not with other fee-shifting statutes, what I'm trying to say is this is, so far as we know, the only fee-shifting statute in which responsibility for attorney's fees is apportioned between the plaintiff and the defendant. Once you're going to apportion responsibility for fees between the plaintiff and the defendant, you need a basis for apportioning fees. I was talking about the amount of the fee. Does the amount of the fee ever depend on the egregiousness? I shouldn't think it does. No. No, the amount of the fee will be calculated by the lodestar amount. Right. In this case, it was odd that the district judge remitted a substantial part. He put the punitive damages down almost $93,000. Right. But then in order to soften the blow, he reduces the amount of attorney's fees. Right. This is a double exercise of discretion that it seems to me quite puzzling. Well, but that sort of discretion, I have to say, is that's a standard feature of fee-shifting statutes. I mean, fee-shifting statutes, I mean, section 1988 is a good example. Section 1988 just says fee has to be reasonable. Could you explain to me why the sentence you read would do the trick? It says what must be done if the award of attorney's fees is greater than 25 percent, but what if the award of attorney's fees is, let's say, 20 percent? How does that tell the court who pays the 20 percent? Okay. So the sentence again, if the award of attorney's fees is greater than 25 percent, the excess shall be paid by the defendant. If the award of attorney's fees is less than 25 percent of the judgment, then the defendant wouldn't have to pay anything under that statute. Right. But, but you think it goes without saying that the plaintiff would have to pay the defendant for 20 percent, because it doesn't say it. So I think all it says is the defendant wouldn't have to pay it. Right. It doesn't say anything about who, whether the plaintiff or what would happen. And that's the point. Right. That really doesn't, you have to read something into it. No, no. It doesn't literally say who pays if it's under 25 percent. Right. But the question is, so Respondent's view of the statute as enacted is that defendants only have to pay to the, of attorney's fees to the extent the fees exceed 25 percent of the judgment. That is what this sentence says. And that's the sentence that was rejected by Congress as this statute was being rejected. Kagan Can I ask, Mr. Banner, in various kinds of ways this statute tries to reduce District court's discretion over fees. I mean, if you take as the baseline 1988, which gives a court discretion over every thing, this statute tried to pull back on that in various ways. But you're saying that in this particular way, when it comes to allocation, we should understand Congress to have left the courts with the full discretion that you can imagine. So why should we read it that way, given that in various other ways the clear aim of Congress was to reduce the court's discretion? Banner I don't know that that's an accurate, I don't think that's an accurate description of the aim of Congress. Certainly the statute compresses the range of possible fee awards. The fees are capped at 150 percent of the judgment. That's a sharp compression of the range of possible awards. But within that range, Congress preserved virtually all of the District court's discretion under section 1988, because all of the limitations in this statute are all expressed in terms of reasonableness, proportionality, and so on. And so the particular provision at issue in our case is just like that. It operates within a compressed range, compressed by the cap on fees of 150 percent of the damages. Sotomayor Was the intent to reduce discretion, or I thought the intent was to deter nonmeritorious lawsuits. Well, if you ask about the Prison Litigation Reform Act as a whole, certainly the intent was to deter frivolous lawsuits in order to facilitate the consideration of the stronger ones. This provision has nothing to do with frivolous lawsuits. This provision only applies when a prisoner has prevailed on the merits, been awarded damages, and been awarded the brief. Sotomayor Well, there are meritorious lawsuits on a scale of merit. Some that are serious, some that are not so serious, where there can be an award. So I can see Congress giving discretion based on the nature of the claim. That is more supportive of your position. Mr. McHenry And that's exactly how the District courts have been applying the statute for more than 20 years now.  Well, this is – it's a little different. I understood the objective of Congress in order to weed out nonmeritorious suits to be to replicate to the extent they could the situation of private parties outside prison. There, if you have a serious injury, you quite often can go to a lawyer who would charge you a contingent fee, say, 25 percent, and whatever your recovery, you would owe him 25 percent of the judgment. And you wouldn't owe him only 2 percent just because the judge in the case thought, well, you didn't do enough work or you could have done better. Mr. McHenry Yeah, that's simply an incorrect view of the statute to say that Congress intended to replicate anything close to a contingent fee regime for prisoners. That could very easily have been accomplished simply by making prisoners completely ineligible for fees under Section 1988. That would have thrown prisoners back on a contingent fee regime, just like members of the general public. Robertson But you can determine that if you're on a straight contingent basis that that – I mean, you have to have enough of an incentive to get lawyers to take the cases and at the same time discourage prisoners from saying, you know, I think this is a serious case, while an objective review, which is what plaintiffs' lawyers do, would suggest that it's not. Okay. But this statute doesn't create anything close to a contingent fee regime. All the statute does is say that the plaintiff has to pay some share of the attorney's fees. How large is that share? A portion of the judgment not exceeding 25 percent. I mean, it's not – it's – Congress could have said – Robertson No, I would say that the plaintiff has to pay some share of the attorney's fees does sound an awful lot like a contingent fee arrangement. Robertson Except that it would be an unusual contingent fee arrangement that would range from 25 percent down to nominal, which is why I say it's not – Robertson Well, that's why I don't think your position is accurate. I mean, you're the one who's saying it's from 25 percent down to nothing. What I'm suggesting is, as I think it is in the contingent fee situation, the lawyer gets his cut before the plaintiff is paid off. Robertson Right. But that's why I'm saying that what Congress did in this statute doesn't even closely – doesn't remotely resemble a contingent fee regime. Congress could have imposed a contingent fee regime, for example, just by saying 25 percent, or by doing what I do. Robertson Well, I'm sorry, but your adversary is saying that's what they did under his reading of the statute, or under his reading of the statute. Robertson Right, but that – I think we're going in circles. That's an untenable reading of the statute, because the statute doesn't say 25 percent. The statute says, of course, you're not exceeding 25 percent. Robertson But you're just getting back to saying that argument doesn't make any sense, because if you read the statute the way I do, it doesn't make any sense. Robertson Look, the interpretation that Respondents favor was in the precursor bill that got taken out. What we're left with is a ceiling but no floor. We're left with not exceeding 25 percent. Breyer I have a language, but it depends, I guess, a lot on the background that this is being passed against. And as I've read this, the background – I tend to agree with what the background is, but I'm not sure what the evidence is. The background is 1988. Now, you say that because I knew you would agree with me on that, but what's the basis for it? I see one thing for the basis, because if it's a 1988 is the background, then normally the prevailing party, in an appropriate case, gets all the feet. He doesn't have to pay a dime. Robertson Right. Breyer Okay? Robertson Right. Breyer So if – but now, so it's important. Are we operating against that as background or something as more general, which is – which was the Chief Justice's question? And the only answer you've given so far is, well, look at – read the language. I'm not sure about the language. I mean, is there anything else that supports the 1988 as the basic background? Robertson Yes, indeed there is. The – before this statute was enacted, the fee-shifting rule governing prisoner cases was section 1988, where the prisoner received the – the prisoner was just like any other litigant prevailing on a civil rights case. The prisoner got – rather, the defendant paid the full 100 percent of the attorney's fees. This statute was enacted against that background. This statute was – was enacted evidently to give prisoners some skin in the game, but not a – not a fixed 25 percent skin, a variable percentage that the district court could adjust in the exercise of its discretion. Well, if there are no further questions, I'll reserve my time. Roberts Thank you, counsel. Mr. Lager. Lager Mr. Chief Justice, and may it please the Court. As – as you noted, Mr. Chief Justice, the purpose that Congress had in enacting this provision was to replicate a contingent fee arrangement. Our interpretation – Sotomayor Where in the – anywhere is that said? Is that discussed? Is that indicated in the – in this section at all? Lager Sure, Your Honor. We get that from a variety of sources. The first is the statute's text. Congress said that the district court shall apply a portion of the judgment to satisfy it. Sotomayor Can I – can I just ask you something about the statute? Lager Sure. Sotomayor Let's assume the statute read, without the parenthetical, what it said, that a portion of the judgment shall be applied to satisfy the amount of attorney's fees awarded against the defendant. Would that mean 25 percent, absent that 25 percent? Lager Absent the parenthetical? Sotomayor Absent the parenthetical. Lager If the parenthetical was not in there, then this – then the provision would mean that the attorney's fees award shall be fulfilled by the judgment. Sotomayor No, it says a portion of the judgment. So it doesn't say all of the judgment. It doesn't say the judgment shall be applied to satisfy the amount of attorney's fees. If all it said is a portion of the judgment shall be applied to satisfy the amount of attorney's fees against the defendant, do you think in that standing alone the district court would have discretion to give a dollar? Lager No, Your Honor. Sotomayor No. It's a portion of the judgment. Lager It is technically a portion of the judgment, but it doesn't – what that does is it reads out the words to satisfy. Sotomayor Why? A portion is a portion. It's not all of it. Lager A portion is a portion, but what that does is it recognizes – Sotomayor It doesn't say all of the judgment. It says a portion. Lager Absolutely, Your Honor. Sotomayor So why didn't Congress say a portion of the judgment, 25 percent, instead of not to exceed 25 percent? Why did it just say a portion of the judgment, 25 percent, shall be applied to satisfy the amount? Lager Your Honor, the not to exceed 25 percent language in the statute – Sotomayor No, no. That's – I'm asking you, what's the difference between the two things? Lager The difference between the two things is that in the statute as written, Congress recognized that there will be circumstances in which the entire fee award will be satisfied by less than 25 percent. In the hypothetical without that parenthetical, it provides that a portion will be used, but for the purpose of satisfying or fulfilling the award. Sotomayor I'm sorry. Is your view, let's assume it's highly unlikely, but it can happen, the attorney's fees are less than 25 percent of the judgment, who pays under your reading of the statute as written? Lager If the attorney's fees are less than 25 percent of the judgment, the prisoner plaintiff pays. Sotomayor And the defendant pays nothing. Lager In that circumstance, that's right, Your Honor. Sotomayor All right. So what is the difference by Congress saying a portion of the judgment not to exceed 25 percent? Why didn't it just say a portion of the judgment, parenthetical, 25 percent, shall be applied? Under your reading, the two mean exactly the same thing. Lager No, Your Honor, because there are circumstances in which, say, 17 percent of the judgment will be sufficient to fulfill the fee award. If there's a $100,000 judgment and a $17,000 fee award, 17 percent of the judgment will fulfill that fee award. That's why Congress didn't say a portion. Sotomayor Then you're doing away with the shall apply. No one ever speaks of the shall apply as meaning that you give more than 25 percent. You don't award him attorney's fees of 25 percent of the judgment. Lager They do not apportion – this statute does not apportion, allow for the apportionment of more than 25 percent of the judgment to fees. But there are circumstances in which the fee award is 25 percent or less than the judgment, and we cite those in footnote 2 of our brief. Sotomayor Mr. Lager? Kennedy Please correct me if I'm wrong, but my understanding is that if you talk about contingent fees and you talk about apportionment, you're talking about apples and oranges. Some fees may be contingent, some fees may not be. All the statute does is say whatever the fee is, 25 percent of it, or no more than 25 percent of it, or 25 percent of it shall be paid by the defendant. Am I correct? Lager You're correct, Your Honor, that the statute says that. Kennedy From the award. Lager From the award. The statute says that no more than 25 percent, but 25 percent or less, if necessary to fulfill, in other words, to satisfy, the fee award shall be applied. The statute does not give discretion to apportion that amount, and indeed my Ginsburg It says not to exceed. It sounds like it's imagining an award that does exceed, and it says not to exceed. What happens when it does exceed? Then the defendant picks up the tab. But the not to exceed language could be a strange thing for Congress to put in if it really meant the plaintiff pays 25 percent, and if the judgment is larger, the defendant pays the rest. Rosenkranz Well, Your Honor, the reason they use not to exceed is that there are cases where the plaintiff won't pay 25 percent, for instance, where the fee award is equal to 17 percent of the judgment. So in that circumstance, the fee award will be fulfilled, or satisfied, with less than 25 percent of the judgment. Kagan Mr. Lager, you put a lot of emphasis on the word satisfy, and I think in most cases you're right as to what satisfy means. I guess the question I have is whether in this context one should think that the word satisfy says anything. And my question goes basically that in many cases, and probably in the vast majority of cases, no part of the judgment, including the full judgment, could possibly satisfy the fee award. So given that we're talking about a circumstance in which in the vast majority of cases the fee award is not going to be satisfied, why should we understand the word satisfy in the way that you think we should? Well, Justice Kagan, because under our interpretation, there will be some circumstances in which the fee award will be completely satisfied. Additionally, under our reading of that law. Kagan Well, I agree with you that there might be some, but the question is, you know, would Congress have used that, the word in your sense, knowing that in most cases it wasn't going to be full payment? It just seems as though when this statute uses the word, given what actually happens in the real world, it meant something more along the lines of contribute to the fee award. I understand, Your Honor, but a couple points on that. First, the fact that the fee, that the judgment may not be sufficient to fulfill the award with the 25 percent cap or otherwise does not change the definition of the word satisfy. Under our reading, the district court is required to use the judgment for the purpose of fulfilling the fee award. The district court may be stopped in circumstances, but that's by virtue of the operation of the 25 percent cap, which is a separate intervening force that impacts the apportionment in that situation. But furthermore, under Petitioner's reading, which would permit a nominal amount, you know, Petitioner indicated that today, that a $1 apportionment would be sufficient. That, in no way, intends to satisfy under any statute. Kagan. Well, I think that's wrong. I mean, I guess what I'm suggesting is that this language should be read or could be read to say, you know, shall go toward satisfying. So a dollar would go a small way toward satisfying, $10 would go a slightly larger, and so forth and so on. Well, Your Honor, under that reading, satisfy need not even be in the statute. We could just lift those words out of the statute as it is right now, in which case you would have the requirement that the court apply a portion of the judgment. But Congress didn't stop there. It stated that you say the purpose for the application of the judgment, which is to satisfy. And our interpretation is consistent with Congress's purposes underlying this. Congress had two purposes underlying this provision. Congress wanted to put plaintiffs in the prisoner plaintiffs in a position similar to typical civil tort plaintiffs. And additionally, Congress wanted to reduce the burden of prisoner litigation on the government. There was discussion during the legislative debates that we cite at page 27 of our awards that the government was being assessed in prisoner cases. Alito, you previously started to explain what evidence there is that Congress wanted to put prisoners in a situation similar to a plaintiff in an ordinary tort case, but I don't think you finished your explanation. What evidence is there of that? Well, Your Honor, in terms of the discussion in the Senate, for instance, there were statements, we cite one of them at page 24 of our brief, a statement by Senator Dole that said that prisoners need to be prisoners do not bear the same types of opportunity costs as non-incarcerated prisoners. And that has contributed to this flood, massive flood of litigation in Federal courts. And we want one of the efforts Congress then had was to put those prisoners to require the prisoners to bear some of the costs of litigation. Sotomayor, I'm sorry, the non-incarcerated plaintiffs are under 1988. They get all of their fees. If they wanted to equalize them, they would have left them alone. Your Honor, Congress made a compromise. There is non-incarcerated civil rights plaintiffs under 1988, absolutely. But then there is civil tort plaintiffs. Sotomayor, but he didn't say civil tort plaintiffs. He said non-incarcerated plaintiffs. He didn't say tort plaintiffs. That's true, Your Honor. But by the discretion limiting provisions of Section ED, Congress clearly moved away from Section 1988. Breyer, it did. You are right. I have the same question that the last actually, that was exactly what you said. Now, your things in your brief talk, they say limit costs and put it in the same position as non-incarcerated plaintiff. What non-incarcerated plaintiff? The first sentence of the statute says, In any action brought by a prisoner in which attorney's fees are authorized under Section 1988. Now, that's fairly strong evidence that they are thinking, since it's right in the statute, the first line, that they are thinking of 1988 plaintiffs. Now, I'm just saying that I can't get too much out of the language. You are right. It would have been absolutely clear if they had said to help satisfy. Then you would lose. But they didn't. They said to satisfy. So we have the language up here about up to and we have the language down there about satisfy. At that point, I myself am not certain. But then I do look to the purpose, which is what you are talking about. And then when I see that, the first sentence is, put them in the same position as 1988 plaintiffs. That's the only instance when they are going to get their attorney's fees. But, but, okay, they will have to pay up to 25 percent. Now, up to 25 percent, now we get into the language. So I get into the puzzle. My thought was, which I'm addressing the question to, we both have the sentence that he quoted on page 12 of his brief, which would have made a choice. We can do this in one of two ways. We can say, prisoner, you always pay 25 percent. Or we could say, judge, you decide, up to 25 percent. Which way? Well, I suddenly had this thought. If we take the former, given the other provision of the statute, which says you have to limit the attorney fees generally to a fair amount given the overall judgment, and these judgments are small, the poor district judge, on your interpretation, facing a problem where the thing is small, all the burden is going to be thrown on the lawyer. It's going to be thrown on the lawyer, because he'll have to reduce the whole attorney fee in order to make this prisoner, who suffered a lot, not be penalized or not really be hurt a lot. So he wants to help the prisoner. Are you following what I'm saying? Breyer. Okay. And then the only way to help the prisoner who's gotten such a small award is to reduce the whole attorney's fees. But if we make it discretionary, there's another way. You can have a reasonable attorney fee here, a little bit higher, and the prisoner doesn't pay the whole 25 percent. We put some of it on the prison guard, the State that's acted so abominably. Now, I think, which is the choice there? They're both reasonable choices. Then I go to page 12 in his brief and the preceding language, and I conclude, hey, Congress was on a seesaw here, and they ended up on his side. Now, that's a little complicated, but that's where I am at the moment. What do you want to say? Rosenkranz. A lot, Your Honor. The you're right that the first sentence of section D.1 states that in any situation and where fees would be authorized under section 1988, but it then continues, that sentence continues, such fees shall not be awarded except, and then the provision goes on, to restrain the court's discretion in awarding a fee under section 1988. So in this provision, Congress moved away. Congress started with section 1988 because these are claims under section 1988. But for this specific class of litigant, Congress moved away from the normal operation of section 1988.  Well, that conclusion, now, but remember, if you follow this complicated argument, sorry to be so calm, but really, I've got the choice down in my mind. The victim here is not the government and it's not the victim, on your interpretation, as I've been through it. It is not so much the prisoner, it is not so much the government, it is the lawyer. Because, as I said, the prisoner who suffered some, you know, pretty bad treatment and has got a very small award, the judge can help him out only by cutting the whole legal fee. But if the opposite interpretation is right, the judge has another tool. The other tool is to make the defendants here pay more than 75 percent. And so now we have two tools. The judge has more discretion. He can deal with the different cases differently. And first they tried the one, rejected it on page 12, and now they try the other. Now, that's where I am. And I don't know. Sure, Your Honor. And I would add that the court or, I'm sorry, Congress in this provision limited the court's discretion to award attorney's fees in other ways. For instance, the total amount of the attorney's fee is capped at 150 percent of the judgment. So Congress took away discretion and limited the amount of attorney's fees in that way. Well, that seems right, that Congress limited discretion in certain ways. The question is, did it limit discretion in this way? Yes, Your Honor, that's exactly right. And when we have a provision in which, if this Court is unclear whether it limited discretion, it can look around to the surrounding provisions and find only situations where Congress did limit discretion. And it's at odds with But that sounds as though we're just going to interpret the statute in a general direction, no matter what. Your Honor, I think that that contextual argument supports our reading of satisfy. I think that, you know, first and foremost, our interpretation is grounded in and gives effect to the word to satisfy. The fact that we read it as nondiscretionary or not discretionary conferring is supported by the surrounding provisions of Section 40. Do you have a – this is the same question that was asked of Mr. Banner. Do you have a way that Congress could have written this statute to clearly state what Mr. Banner thinks it means, you know, that's better than this? If Congress wanted to state, Congress could have used language that it always uses in fee-shifting statutes when it intends to confer discretion on district courts. In those fee-shifting statutes, Congress uses may instead of shall and states the discretion. And so, for instance, the Court could have said the district court, whenever a monetary judgment is entered, the court may, in its discretion, apply a portion of it to the fee award. That's what Petitioner's reading means. Ginsburg. Mr. Langner, if, as this discussion has gone on, we conclude that this statute is ambiguous, it could be read your way, it could be read their way, then as the Justice Breyer suggested, why shouldn't we take 1988 as the closest, rather than I think you suggested that, well, then look to the American rule. Under the American rule, each party bears his or her own counsel fees. Your Honor, in that situation, it's important to understand that Congress explicitly moved away from the operation of Section 1988. So it moved away from the broad or wide fee-shifting or complete fee-shifting under Section 1988 to something else. And in so moving, it moved towards the American rule. Now, Congress made a compromise. Congress decided that prisoner plaintiffs should be allowed, be permitted to retain at least 75 percent of their judgment. But the fact that Congress reached that compromise doesn't mean that we're still really in the background of Section 1988, especially where Congress moved away from the operation of Section 1988 in so many ways. For instance, in Section D-1, Congress specified that the amount of attorneys' fees shall be proportionally related to the relief ordered. That is completely the opposite of the rule under Section 1988. Breyer. Here's another, here's another, I don't know, looking at the dictionary here, unsatisfy. Isn't it the case that the government pays the rest of the reasonable fee, right? Yes, Your Honor. And everybody knows the government pays the rest of it, right? Yes. Okay. So think of a case where it's 12 percent, which you think it can't be. But suppose the judge says, 12 percent, you paid 12 percent, okay? Now, they're paying the rest from the government. He's paying the 12 percent in the circumstances that satisfies the debt. Think of bankruptcy. Think of a settlement. Think of a settlement. You pay for the settlement. You don't pay the whole thing. You pay some of it. That's why I won't read the dictionary. It's a little complicated. But it seems to me that the – luckily, we have a dictionary here all the time. And it's helpful. And I understand. I understand the argument. Okay. Then it satisfies it. But then the whole statute is linguistically satisfied or whatever. No, but we disagree. When Congress uses the term satisfy, it means to fulfill the obligation. Yes, right. And the obligation is to pay that portion of the debt that isn't going to be paid by the defendant. And by the time you're finished, the debt is satisfied. In the first sentence of ED-2, the obligation is to pay, to fulfill the fee award from the judgment with a capped amount. But this is no different than circumstances in which Congress specifies a primary source to be used to fulfill an obligation and then realizes that sometimes that primary source may not be sufficient to fulfill that obligation and then specifies a secondary source. I mean, if my wife gives me a carrot for dinner to satisfy my hunger, but she knows that if she does that, I will just go in the refrigerator and stuff myself with lots of other stuff so that I won't be hungry anymore, I don't know, does that make the carrot sufficient to satisfy my hunger? No, Your Honor. In that situation, it would probably, you know, be a discretion to me. Suppose she knows that he's going to eat that delicious turkey sandwich in the refrigerator. Now, now the carrots are just enough to fill up that little hole that will remain. But true, but in that circumstance, if the first source of satisfying Justice Alito's hunger was what his wife provides him, then, you know, if that is ultimately  Sotomayor, but that's not, it's up to 25 percent. They didn't say 25 percent. Well, for instance. 25 percent of what she cooks. Because that recognizes that when Justice Alito's wife makes a casserole, 17 percent of that casserole may satisfy his hunger. There will be circumstances in which not the entire 25 percent will be needed to fulfill the obligation or the requirement. Sotomayor, can I ask about something else, which is we've made the American rule the presumption, but I come at it, why aren't we looking at the discretionary rule of 1988? In fee-shifting statutes that are clear, and this is clear, they're shifting some fees, we tend to give district courts maximum discretion. We don't look to tie their hands. Why do you think that given the fact that some plaintiffs are seriously injured by State defendants, that Congress would have wanted to take away from the district court absolute discretion to ensure that a plaintiff is adequately compensated for the severity of their injury? Because, Your Honor, in those circumstances where the Congress does confer on the district court absolute or broad discretion, it uses discretion-conferring language such as may, and in its discretion. Section 1988b itself uses the words in its discretion. And there's other examples in Section 505 of the Copyright Act or Section 1132g1 of ERISA. Those – in those provisions, Congress provided that the court may, in its discretion, award fees. Congress didn't use those words here. What Congress did was it made a choice. Congress said that there is a lot of prisoner litigation out there, and the government is bearing a huge burden of this, and we are in particular concerned about attorney's fees awards. So Congress made a compromise. Congress reached an agreement that will decrease or limit the government's exposure to fee awards at the same time as treating a prisoner plaintiff more like a civil tort plaintiff. Civil tort plaintiffs may have meritorious claims and get compensatory damages and large punitive damages awards. But the general rule is that those plaintiffs don't get punitive awards under 1988. Not under 1988, you know, that's the point, isn't it? Well, Your Honor, the point is that Congress meant to – Congress clearly departed from the operation of Section 1988. In the other provisions of D-1, for instance, when it capped the reasonable hourly rate, put in the required – capped the overall amount of the fee award and put in the requirement that the fees be proportionally related, Congress signaled its intent that the wide discretion under 1988 is not at play here anymore. We've moved away from that. Sotomayor, Well, these plaintiffs cannot receive punitive damages against the State, correct? These plaintiffs did receive punitive damages. Sotomayor, They did, and it was put down, and it was re-reduced. It was remitted, some of it, but these plaintiffs still received over $270,000 in punitive damage award in this case. Your Honors, our interpretation best serves the plain language of – that Congress used and best serves the statute's context, as well as serves the purposes underlying the PLRA. Thank you very much, Your Honors. Thank you, counsel. Seven minutes, Mr. Banner. Well, the crux of this is the word satisfy. The question is whether the word satisfy can bear the weight that Respondents put on it. And so all I want to do is emphasize how common it is to use the phrase applied to satisfy in the way that Justice Kagan suggested to me, not – not applied to pay completely, but applied in that direction, applied toward satisfying. So, for example, the rental payments on a violin can be applied to satisfy the purchase price if the – if the student persists in taking lessons. Obviously, the rental payments aren't going to completely fulfill the purchase price. They're going to be applied in that direction. Work an attorney does on a pro bono matter can be applied – the hours can be applied to satisfy the attorney's pro bono obligation. Even if it's an hour – just a couple of hours. In ordinary English, we say those hours are applied to satisfy the pro bono obligation. Congress uses applied to satisfy in the same sense in statutes. We give an example at page 8 of the – of the yellow brief involving extra pay for Navy personnel who spend more than 48 hours on a submarine in a month, but the relevant provision in the statute is hours in excess of 48 in a given month may be applied to satisfy the 48-hour requirement in subsequent months, even if they don't completely fulfill the 48-hour requirement in subsequent months. So in this statute, when Congress used the phrase applied to satisfy, the most plausible interpretation of it is applied in the direction of satisfying, not applied to pay completely. Kagan. Do you have any sense of how many cases up to 25 percent of the judgment actually will be able to satisfy? How often it is that the attorney's fees are less than 25 percent? No. How often it is that the amount, you know, whether it's 25 percent of the judgment or some lesser amount, will actually satisfy the amount of fees awarded? Oh, it's extraordinarily rare because – because, you know, these cases might take hundreds of hours to litigate, and the average monetary award is a bit more than $4,000. So there's an enormous mismatch here. It's a very, very rare prisoner case in which the 25 percent of the judgment would even come close to fully, completely paying the obligation for attorney's fees. That's right. Thank you. Thank you, counsel. The case is submitted.